## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Gershon Barkany,<br><br>        Debtor. | Chapter 7<br><br>Case No. 8-14-72941-las |
| Marc A. Pergament, Chapter 7 Trustee of the Estate of Gershon Barkany,<br><br>        Plaintiff,<br><br>versus<br><br>Joseph Rosenberg, Deborah Rosenberg, Jonathan Zelinger, Gila Zelinger, Ethical Products, Inc. and Petex International Limited,<br><br>        Defendants. | Adv. Pro. No.  8-16-08149-las |
| Marc A. Pergament, Chapter 7 Trustee of the Estate of Gershon Barkany,<br><br>        Plaintiff,<br><br>versus<br><br>Alan Gerson, Bruce Montague & Partners, Alfred Schonberger, Judith Schonberger, Old World Investments, Sam Sprei, Jonathan Zelinger, Joseph Rosenberg, Jaxon Rosenthal, JP Morgan Chase Bank, National Association, 169 16th Street LLC, WLCF Metro Equity Holdings LLC, L'Chayim Foundation, Inc., and Law Offices of Allan Lebovits, P.C.,<br><br>        Defendants. | Adv. Pro. No.  8-16-08171-las |

## BARKANY ASSET RECOVERY & MANAGEMENT LLC'S OBJECTION TO APPLICATION TO APPROVE SETTLEMENT

**BARKANY ASSET RECOVERY & MANAGEMENT LLC'S OBJECTION
TO APPLICATION TO APPROVE SETTLEMENT**

TO THE HONORABLE LOUIS A. SCARCELLA
UNITED STATES BANKRUPTCY JUDGE:

Barkany Asset Recovery & Management LLC ("BARM"), through its undersigned counsel, respectfully submits this objection (the "Objection") to the Chapter 7 Trustee's application (the "Application") to approve a Stipulation of Settlement with Jonathan and Gila Zelinger, Ethical Products, Inc. and Petex International Limited.  Should the Court not deny the Application at the hearing noticed for August 6, 2019, BARM requests that the Court schedule an evidentiary hearing for a later date.

## SUMMARY

1. Pursuant to a Court-approved stipulation between BARM and the Trustee, BARM holds an allowed claim in the amount of $39,615,354.91, the largest non-contingent claim filed in this bankruptcy case.

2. Joseph and Deborah Rosenberg (the "Rosenbergs") are the parents of Gershon Barkany's wife, Sarah Barkany.  Jonathan and Gila Zelinger (the "Zelingers") are Ms. Barkany's uncle and aunt.

3. Jonathan Zelinger is President of Ethical Products, Inc. ("Ethical") and Petex International Limited ("Petex," and together with the Zelingers and Ethical, the "Zelinger Parties").  Joseph Rosenberg is Ethical's and Petex's Vice President and Chief Information Officer.  The Rosenbergs, the Zelingers, Ethical and Petex are insiders with respect to this bankruptcy case.

4. In return for a $45,431.22 payment from the Zelingers, which Jonathan Zelinger apparently does not seriously dispute he owes the Estate as "net winnings" from his dealings

with Barkany, the Trustee proposes to release all of the Estate's claims against the Zelingers (against whom the Trustee has asserted a $380,430.98 claim) and Ethical and Petex (against whom the Trustee has asserted claims for $805,000.00 and $481,700.00, respectively). Thus, Ethical and Petex are to be released without contributing any additional funds to the settlement.

5. The Trustee's Application should be denied for several reasons. First, as explained in more detail below, the Trustee's investigation of the Zelinger Parties has not been conducted in a reasonable or comprehensive manner. To the contrary, it appears that the Trustee's investigation has been conducted in a perfunctory fashion, without challenging the accuracy of the Zelinger Parties' contentions by seeking production of all relevant records from the Zelinger Parties and taking testimony and obtaining records from outside parties to verify the testimony and the completeness of the document production by the Zelinger Parties. Because the Trustee has not conducted an adequate investigation, he has not discharged his duty to investigate, his judgment that the settlement is appropriate is not well informed, and the Court should deny the Trustee's Application.

6. Second, it is premature to consider releasing the Zelinger Parties without first resolving the liability of the Rosenbergs, who remain defendants in these actions. Joseph Rosenberg, who at all relevant times has been an officer of Ethical and Petex, has acknowledged that he freely used the funds in bank accounts of Ethical and Petex to advance funds to Barkany when Rosenberg did not have funds requested by Barkany readily available in his own accounts. Even if the Trustee is ready to accept that Mr. Zelinger had no idea that his companies were being used in this manner, any knowledge that Rosenberg had or should have had of Barkany's fraudulent activity may be imputable to Ethical and Petex; thus, Ethical and Petex may not be eligible for a good faith transferee defense. Further, Ethical and Petex may be jointly liable with

Rosenberg for some or all of the millions of dollars that he is known to have received from Barkany. The Zelinger Parties and Ethical and Petex in particular should not be released until there is more clarity on these issues and activities.

7. Third, the Application should be denied until such time as the Trustee has conducted a thorough review of a massive amount of computer files maintained by Barkany that the Trustee claims to have received only recently - some two months ago. According to the Trustee, this information was not available when the Trustee negotiated the settlement with the Zelinger Parties. These new files contain many thousands of documents, many of which apparently were not previously available, relating to Barkany's activities from 2008 through at least 2014. These new files also confirm the existence of, but do not contain, many Barkany bank records and numerous email accounts whose contents have not been made available to the Trustee. These records should be reviewed before the Trustee's settlement can be properly considered by the Court.[1]

8. Contrary to the simplistic approach taken in the Application, the claims that the Trustee is seeking to settle are far more complicated than the typical action in which a non-insider returns easily calculated fictitious profits to a trustee. The claims in this case involve numerous transactions conducted by insiders for very substantial amounts of money, much of which was to provide short term financing to a cash strapped schemer as opposed to arm's length investment transactions. At a minimum, the Trustee should conduct a proper and complete investigation based on a review of all the relevant facts before he proposes a resolution of the claims.

---

[1] Additionally, the release contained in Stipulation of Settlement includes all of the claims against the Zelinger Parties in the action that BARM and Cortland Realty Investments LLC filed in state court in 2014 (which is stayed), in which the Trustee intervened as a co-plaintiff. BARM submits that the Court should limit the release to those claims in the state court action that are property of the Estate.

**BACKGROUND**

9. Barkany's Ponzi scheme became known in December 2010. That month, Barkany allowed BARM to copy the data on his computers and began providing additional information to BARM. BARM learned that Barkany had engaged in numerous transactions with his wife's father, Joseph Rosenberg, his wife's uncle, Jonathan Zelinger, and Ethical and Petex, of which Rosenberg and Zelinger were officers. In 2013, BARM served subpoenas duces tecum on Rosenberg and Zelinger. Rosenberg and Zelinger produced approximately 1,200 pages of documents, but there were significant deficiencies in their production. Among other things, the records that Rosenberg and Zelinger produced were heavily redacted, and the production included few records from Ethical and Petex.

10. Notwithstanding the deficiencies in the production, BARM learned that Barkany had transferred at least $5,000,000.00 to Rosenberg, $380,000 to Zelinger, $805,000.00 to Ethical and $481,700.00 to Petex. Rosenberg acknowledged that he caused Ethical and Petex to make very short term loans to Barkany when he lacked the funds needed to fulfill Barkany's many requests for short-term funding.

11. In March 2014, BARM commenced an action against the Rosenbergs and the Zelinger Parties, asserting claims based on fraudulent conveyance, unjust enrichment, conversion, constructive trust and aiding and abetting Barkany's fraudulent activities. Before discovery could begin, Rosenberg and two other alleged creditors commenced this involuntary bankruptcy case against Barkany. An order for relief was entered and Marc Pergament was appointed as interim trustee.

12. BARM met initially with Mr. Pergament and, later, trustee Mark Frankel, and then again with Mr. Pergament. BARM informed both trustees of the investigation it had

conducted and the substantial gaps in the information that it had received about Rosenberg, Zelinger, Ethical and Petex and requested that they investigate the claims using the powers available to them under the Bankruptcy Code. BARM also asked of both trustees that Barkany's computers be secured and their files reviewed. Mr. Frankel commenced the above captioned adversary proceeding in which the Rosenbergs and the Zelinger Parties are defendants. Shortly thereafter, Mr. Frankel resigned and Mr. Pergament succeeded him as permanent trustee. Mr. Pergament continued to prosecute the action against the Rosenbergs and the Zelinger Parties.

13. The Trustee requested that BARM provide him with the QuickBooks database that BARM had constructed. In December 2016, BARM provided the requested work product to the Trustee and informed the Trustee that its database was limited to the time that Barkany allowed his files to be copied, at the end of 2010. On several subsequent occasions, both before and after the Trustee filed the instant Application, BARM asked the Trustee to use his powers as trustee to conduct an extensive review of the defendants' financial records and to obtain testimony under oath and documents from persons other than Rosenberg and Zelinger who may have knowledge about the defendants' transactions with Barkany. It does not appear that this has been done.

14. In November 2016, the Trustee moved the Court for an order compelling Barkany to turn over his computers. (ECF 403.) In January 2017, the Trustee advised the Court that Barkany's counsel had turned over the computers and withdrew his motion. (ECF 430.) In fact, however, it appears that the computers had not been turned over to the Trustee. Subsequently, BARM repeatedly asked the Trustee to secure the computers but was told the Trustee was not able to do so.

15.     Recently, on May 23, 2019, more than one year after he filed the pending Application, the Trustee advised BARM that he had "recently" obtained Barkany's computers. The Trustee informed BARM there was nothing of interest on the computers. BARM requested copies of the computers' hard drives, and in the first week of June, 2019, the Trustee delivered approximately twenty-two (22) gigabytes of data to BARM, containing approximately 1,443 documents (PDF's, Excel spreadsheets and Word documents), 128,000 emails and an uncounted number of attachments to emails ranging in date from 2008 until after the bankruptcy case was commenced in 2014.

16.     BARM's forensic accountant, S. David Belsky, CPA, began to review the data files but quickly encountered difficulties accessing certain of them. For example, some of these files were password protected, while others could not be "searched" and require manual review, one document or email at a time. BARM's review of the computer files is not yet complete. Certain of the documents in these new files contain information previously unavailable that are directly related to Barkany's fraudulent conduct, Barkany's relationships with the Zelinger Parties and Mr. Rosenberg and a substantial amount of new funds that Barkany raised during the bankruptcy case, the disposition of which is apparently missing from these files. Further, the computer files reveal the existence of a number of Barkany email accounts that, to BARM's knowledge, have not been obtained or reviewed by the Trustee.

17.     Given the huge amount of information in these files, the Application should not be considered by the Court until a proper review has been completed.

**OBJECTION**

**The Trustee has a duty to investigate claims before compromising them.**

18. It is well understood that a bankruptcy court may approve a settlement if it is fair, reasonable and adequately based on the facts and circumstances before the court. *In re Hibbard Brown & Co.*, 217 B.R. 41, 45 (Bankr. S.D.N.Y. 1998). The court's responsibility is to "canvass the issues and see whether the settlement fall[s] below the lowest point in the range of reasonableness." *In re W.T. Grant Co.*, 699 F.2d 699, 608 (2d Cir. 1983) (internal quotations omitted).

19. However, while it is often stated that a trustee's judgment concerning a settlement is to be given weight, it remains the trustee's burden to demonstrate that the compromise is in the best interest of the estate, *In re 110 Beaver Street Partnership*, 244 B.R. 185, 187 (Bankr. D. Mass. 2000). The trustee "has a duty to investigate the merits of … claims before compromising them." *Id.* at 192. *See also* 11 U.S.C. § 704(a)(4) (trustee shall investigate debtor's financial affairs). The giving of weight to the trustee's judgment is premised on the trustee having adequately investigated. *See In re Drexel Burnham Lambert Group, Inc.*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991) (court "may give weight to the <u>informed</u> judgments of the trustee or debtor-in-possession and their counsel") (underlining added).

20. Thus, the proposed settlement should not be approved unless the Trustee demonstrates both that he has adequately investigated the claims that he proposes to settle and that the settlement is in the best interest of the estate. BARM submits that the Trustee has not yet carried this burden.

8

71565934v.8

**The Trustee has not adequately investigated the**
**claims against the Zelinger Parties.**

21. The Trustee's Application proposes to settle what may be among the Estate's most significant claims, claims concerning transactions that are substantial in both amount and number and involve Barkany's relatives, who are insiders. Aside from accepting the testimony of the Zelinger Parties at face value and that they produced all of the responsive records that the Trustee requested, the Trustee's Application contains little if any detail concerning what the Trustee did to verify the accuracy or completeness of this information.

22. For example, the Application does not say what, if anything, the Trustee did to test Zelinger's assertion that he was unaware of Barkany's fraud, to determine whether Zelinger knew of red flags that should have prompted investigation, or to determine whether anyone else whose knowledge might be imputed to Ethical or Petex, such as Rosenberg, knew or should have known of Barkany's fraud. Further, the Application says nothing about Rosenberg, the Vice President and Chief Information Officer of Ethical and Petex, who acknowledges causing Ethical and Petex to make very short term, interest free loans to Barkany whenever Barkany needed funds that Rosenberg did not have available in his personal accounts. These advances helped keep Barkany's Ponzi scheme afloat to the detriment of his creditors.

23. Further, the Application does not say whether the "voluminous" records produced by the Zelinger Parties were produced pursuant to formal requests for production of documents designed to uncover the entire financial relationships between the Zelinger Parties and Barkany and between Rosenberg and Ethical and Petex. Nor does it state whether the Zelinger Parties satisfied any requests the Trustee may have made or whether they or other corporate representatives confirmed the fullness of the production was confirmed under oath. The Application also does not address why the period covered by the document production ended in

9

2012, two years before the bankruptcy case was filed, rather than extending through the bankruptcy petition in this case and thereafter, when Barkany appears to have again raised substantial funds the disposition of which is apparently unknown.

24. Indeed, it appears that the Trustee's investigation was done in a very accepting manner. The Trustee was apparently satisfied to review only the information that BARM provided, the information contained in the Zelinger Parties' self-serving declarations and affidavits of loss that were either filed in this Court or provided to the U.S. Attorney, and such other documents as the Zelinger Parties may have volunteered to produce, and to accept without challenge Zelinger's testimony that he was not aware of Barkany's fraud.

25. Information BARM provided to the Trustee and the new computer files that BARM recently received from the Trustee do not seem to support the Trustee's ready acceptance of Zelinger's claim that he was completely ignorant of Barkany's fraudulent activity until after Barkany's arrest. These new files indicate that Barkany made extensive use of the name "Ethical" in connection with his business ventures beginning before and continuing even after his arrest.

26. It appears that Zelinger was aware of Barkany's use of the name "Ethical." Rosenberg, who is Zelinger's subordinate at Ethical and Petex, testified in 2013 that at Barkany's request, he paid a $25,000.00 retainer in July 2013 (after Barkany's March 2013 arrest) to an attorney for a Barkany business venture called "Ethical EP, LLC." (See Exhibit A annexed hereto.) Regarding the venture's name, Rosenberg said, "Here is where it gets a little confusing." (*Id.*)

27. While Zelinger might claim that he had no ability to control whether Barkany used the "Ethical" name, an email recovered from these new computer files suggests that

10

71565934v.8

Zelinger was not bashful about letting Barkany know when he was unhappy about Barkany's actions. On December 17, 2014, shortly before Barkany consented to the involuntary bankruptcy filing that Rosenberg and others had filed against him, Rosenberg emailed Barkany that "Jonathan called me very angry. You said you were going to call him and you didn't. You said you were going to file and you didn't. Very disappointing." (See Exhibit B annexed hereto.) We have not yet located anything indicating that Zelinger was unhappy, angry or even disappointed that Barkany was using the name "Ethical."

28. Furthermore, the Trustee does not claim he requested access to the Zelinger Parties' books and records, especially those of Ethical and Petex. Nor does the Trustee state that he independently verified any of the information that the Zelinger Parties, all of whom are insiders, chose to provide to him. For example, BARM provided the Trustee with account numbers for bank accounts that BARM discovered were used by Barkany. The Trustee does not claim that he served subpoenas on these banks to obtain complete sets of records on the accounts used by Barkany. Nor does it appear that the Trustee served subpoenas on any banks concerning accounts used by the Zelinger Parties to determine whether their production of records to the Trustee included all responsive records.

29. The affidavits of loss and declarations signed by Jonathan Zelinger show that Ethical and Petex made at least fifteen very short term, interest free loans totaling at least $2,300,000 to Barkany in 2008 through 2010. The affidavits and declarations further show that Ethical provided $975,000 to Barkany in 2012 in other short term transactions that although referred to by Jonathan Zelinger as "investment transactions" allegedly produced no profit. This volume of no cost financing warrants thorough investigation. Among the questions it raises is whether the Zelinger Parties are entitled to a good faith transferee defense. (In addition,

11

Rosenberg lent his own funds to Barkany and allowed him to run hundreds of thousands of dollars through Rosenberg's checking account.) The Trustee, however, appears to have merely accepted Zelinger at his word that there is nothing here other than that Zelinger obtained a $45,431.22 profit that he is willing to return. In return, the Trustee is willing to release not just Zelinger, but also Ethical and Petex, even though they are not contributing to the settlement.

30. In light of the foregoing, BARM submits that the Trustee's investigation has been inadequate. The Application should not be considered until the Trustee has conducted a comprehensive investigation concerning the Zelinger Parties, including without limitation a search for additional transactions, testimony under oath by appropriate outside parties who may have knowledge of transactions among the Zelinger Parties and Barkany, and formal requests for production of all financial records concerning the Zelinger Parties' relationships with Barkany and each other, bank records for accounts used by Barkany and/or his wife subsequent to December 2010, and such other information as may be necessary for the Trustee to conduct a proper investigation. Additionally, as explained further below, the Trustee should obtain and review Barkany's computer records and email and bank accounts.

**The Trustee should not settle with the Zelinger Parties separately from Rosenberg.**

31. The Application does not even address how the Trustee can settle with the Zelinger Parties in advance of resolving the Estate's claims against Rosenberg.

32. Rosenberg, who at all relevant times was the Vice President and Chief Information Officer of Ethical and Petex, made short term, interest free loans to Barkany when Barkany had cash flow problems. Rosenberg acknowledged that when he did not have personal funds available to make the advances requested by Barkany, he used funds in the accounts of Ethical and Petex to provide the funds requested by Barkany. Rosenberg has sufficient control over Ethical and Petex that he could freely use the funds in their accounts. Should it be

determined that Rosenberg knew or should have known of Barkany's fraudulent activity, such knowledge may be imputed to Ethical and Petex and they may be required to return the $1,286,700.00 or more that they received from Barkany, even if those transfers might be characterized as loan repayments or returns of investments. In such a case, Ethical and Petex may also be jointly liable with Rosenberg for any amounts that he is liable to return to the Estate.

33. It is not in the best interest of the Estate to grant the Zelinger Parties a release at this time, before the Rosenbergs' liability has been resolved, in return for a $45,431.22 payment from the Zelingers that Mr. Zelinger apparently concedes he owes with no consideration from Ethical or Petex.

**No settlement should be approved until the recently obtained**
**computer records have been thoroughly reviewed.**

34. BARM has been asking, almost from the day that a trustee was appointed in this case, that Barkany's computers be obtained and secured. BARM asked this of Marc Pergament when he was interim trustee, it repeated the request to Mark Frankel when he was trustee, and it has asked this of Mr. Pergament after he succeeded Mr. Frankel as trustee. On several occasions, BARM explained to the Trustee that the hard drives that Barkany allowed BARM to copy in 2010 (which BARM allowed the Trustee to copy) were necessarily limited to information on the hard drives in 2010. As now clear from the new computer files recently received from the Trustee, Barkany continued to use his computers extensively after 2010, and the computers contain a very substantial amount of post-2010 information that is likely of substantial value to the Estate.

35. The Trustee and his predecessor apparently recognized that these computers might be of value. On November 11, 2016, the Trustee moved the Court for an order compelling Barkany's counsel to turn over the computers. (ECF 403.) In support of his motion, the Trustee

alleged that Mr. Frankel and the Trustee had each requested the computers, but Barkany objected on Fifth Amendment grounds. Barkany filed a declaration in opposition to the Trustee's motion (ECF 404), and the initial hearing was apparently adjourned. On January 5, 2017, the Trustee advised the Court that he was withdrawing the motion and that Barkany's counsel had fully cooperated and turned over the computers. (ECF 430.) As shown in the next paragraph, notwithstanding the Trustee's statement that the computers had been turned over to him, it appears that the Trustee did not recover these computers until very recently, more than one year after he agreed to the proposed Stipulation of Settlement with the Zelinger Parties. Thus, the Trustee did not have these computers when he agreed to the proposed settlement.

36. On May 23, 2019, the Trustee advised BARM that he had "recently" received two computers from Barkany's counsel, the contents of one computer had been reviewed, but reviewing the contents of the other required an adapter that the Trustee was obtaining. According to the Trustee's counsel:

> The contents of the computer that I reviewed relate primarily to Barkany's post-arrest business dealings. In addition, there are numerous documents/files relating to his arrest, his recovery of assets and to the early phases of his bankruptcy case. …
>
> As far as I can discern, none of the documents/files in the computer sheds any meaningful light on the relationship between Barkany and Zelinger/Rosenberg and/or the transactions between Barkany and Zelinger/Rosenberg. Certainly, there are no documents/files indicating the existence of previously undisclosed transactions.

(See Exhibit C annexed hereto.)

37. On June 4, 5 and 6, 2019, the Trustee uploaded certain files to a folder at dropbox.com, from which BARM could download them, and sent BARM a flash memory stick containing a very large file that could not be uploaded. According to the Trustee, the produced files are from both computers.

38. BARM began efforts to access and review the information, which comprised approximately twenty-two (22) gigabytes of data, comprising approximately 1,443 documents (PDF's, Excel spreadsheets and Word documents), 128,000 emails and an uncounted number of email attachments, ranging in date from 2008 until after commencement of the bankruptcy case. BARM has had difficulties accessing a substantial amount of the data and many of the documents and emails must be reviewed document by document and email by email. It is questionable, given this large amount of data, that the Trustee's review was sufficiently thorough to support his conclusion that the data sheds no meaningful light on the relationships among Barkany, the Rosenbergs and the Zelinger Parties.

39. BARM's review of these records to date, although incomplete, has revealed the following:

> a. A substantial amount of information which was created after BARM copied Barkany's hard drives in 2010.
>
> b. A substantial amount of information which was created after Barkany's arrest in March 2013.
>
> c. A substantial amount of information which is related to Barkany's new activities, even during the bankruptcy case, including raising of substantial new funds whose disposition apparently remains unknown.
>
> d. Even after his arrest, Barkany continued to use the name "Ethical" extensively in connection with his business ventures, with the apparent knowledge of Rosenberg and Zelinger. Someone identified as "JZ" appears to have been an anticipated participant in at least some of these ventures.
>
> e. Barkany apparently anticipated that Zelinger would receive a share of profits from a transaction he was trying to put together in 2014.
>
> f. Barkany continued to use the following email accounts, which are not available on his computers:
>   - gershon@ethicalep.com
>   - garybarr20@gmail.com
>   - gershonbarkany@gmail.com


- info@prattlenders.com
- gershon@magnumepllc.com
- gbarkany@gmail.com
- gbarkany@madisoncres.com

40. BARM submits that a thorough review of these newly received computer files and email accounts should be undertaken, for the purpose of evaluating the claims against the subject defendants and the extent to which they engaged in additional transactions with Barkany, as well as to determine whether these materials reveal additional estate property or claims against other persons of which the Trustee is not presently aware.[2]

41. BARM submits that no settlements should be approved until the computer records and email accounts have been properly investigated and other reasonable steps have been taken to verify the accuracy of information provided by the Zelinger Parties and to satisfy the Court that the Trustee has conducted a proper review of all relevant records.

**Should the Court determine to grant the Trustee's application, the release provision should be reformed so that any claims that BARM may have <u>against the Zelinger Parties are not released.</u>**

42. In the proposed Stipulation of Settlement, the Trustee releases, *inter alia*, "all of the BARM State Court Action Claims." (Application in Support, Exhibit A (Stipulation of Settlement), § 9.) BARM filed the BARM State Court Action Claims in the New York Supreme Court in March 2014, before the bankruptcy case was commenced. Although the Trustee may have the right to release claims that are property of the Estate or that are state law fraudulent conveyance claims, but he does not have the right to release BARM State Court Action Claims that belong to BARM. The Court should not approve the proposed settlement at this time. However, should the Court nevertheless determine to do so, BARM requests that the Court's

---

[2] Because of self-incrimination concerns, Barkany has never filed schedules of assets and liabilities, appeared and been examined at a §341(a) meeting or given any testimony about his assets and liabilities.

order expressly state that the release provided in the Stipulation does not include BARM State Court Action Claims that belong to BARM.

## CONCLUSION

For the reasons stated above, BARM respectfully requests that the Court deny the Trustee's Application to approve the proposed settlement with the Zelinger Parties.

Dated: July 30, 2019

LOCKE LORD LLP

By: s/ Alan H. Katz
    Casey B. Howard
    Alan H. Katz
    Brookfield Place
    200 Vesey Street, 20th Floor
    New York, New York 10281
    Telephone: (212) 415-8600
    Attorneys for Barkany Asset Recovery & Management LLC

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of July 2019 the foregoing Objection was served by emailing the same and the associated Notice of Electronic Filing to the following:

Marc Pergament:
mpergament@wgplaw.com

Marc Weingard:
mweingard@wgplaw.com

Lester Kirshenbaum:
lester.kirshenbaum@ethicalpet.com

    s/ Alan H. Katz
    Alan H. Katz