| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>EASTERN DISTRICT OF NEW YORK<br>---------------------------------------------------------X | RETURN DATE:   AUGUST 6, 2019<br>TIME:                   10:00 A.M. |
| In Re:<br><br>Gershon Barkany,<br><br>        Debtor.<br>---------------------------------------------------------X | Chapter 7<br><br>Case No. 814-72941-845 |
| Marc A. Pergament, as Chapter 7 Trustee<br>the Estate of Gershon Barkany,<br><br>        Plaintiff,<br><br>- against -<br><br>Joseph Rosenberg, Deborah Rosenberg,<br>Jonathan Zelinger, Gila Zelinger, Ethical<br>Products, Inc. and Petex International Limited,<br><br>        Defendants.<br>---------------------------------------------------------X | Adv. Proc. No. 816-08149-845 |
| Marc A. Pergament, Chapter 7 Trustee<br>of the Estate of Gershon Barkany,<br><br>        Plaintiff,<br><br>- against -<br><br>Alan Gerson, Bruce Montague & Partners,<br>Alfred Schonberger, Judith Schonberger,<br>Old World Investments, Sam Sprei, Jonathan Zelinger,<br>Joseph Rosenberg, Jason Rosenthal,<br>JPMorgan Chase Bank, National Association,<br>169 16th Street LLC, WLCF Metro Equity<br>Holdings LLC, L'Chayim Foundation, Inc., and<br>Law Offices of Allan Lebovits, P.C.,<br><br>        Defendants.<br>---------------------------------------------------------X | Adv. Proc. No. 817-08171-845 |

## TRUSTEE'S RESPONSE TO BARM'S OBJECTION
## TO APPLICATION TO APPROVE SETTLEMENT

TO:   The Honorable Louis A. Scarcella,
      <u>United States Bankruptcy Judge:</u>

Marc A. Pergament ("Pergament"), Chapter 7 Trustee ("Trustee") of the Estate of Gershon Barkany ("Debtor" or "Barkany"), by his attorneys, Weinberg, Gross & Pergament LLP, respectfully presents this Response to the Objection of Barkany Asset Recovery & Management LLC ("BARM") to the Trustee's Application for an Order pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure: (a) approving the settlement by and among the Trustee, Jonathan Zelinger ("Zelinger"), Gila Zelinger ("Gila"), Ethical Products, Inc. ("EPI") and Petex International Limited ("Petex") (collectively "Zelinger Parties"); and (c) for such other and further relief as this Court deems just and proper:

1.   The Trustee is aware that in applying the *Iridium* factors to motions such as the one presented here, in which an objection is filed, this Court often wishes to hear testimony from the Trustee.

2.   In that regard, the Trustee is prepared to testify with respect to the fulsomeness of the investigation that he and his counsel conducted, prior to entering into the Stipulation of Settlement, concerning the claims against the Zelinger Parties underlying this adversary proceeding.

3.   The Trustee is further prepared to testify as to why, following his and his counsel's investigation, in the exercise of his business judgment, he determined that settling his claims against the Zelinger Parties on the terms set forth in the Stipulation of Settlement was in the best interest of the Estate.

4. However, before testifying, certain issues and arguments raised by BARM require immediate responses.

5. The essence of BARM's objection is that the Trustee and his counsel failed to conduct a "reasonable or comprehensive" investigation of the Zelinger Parties. (Objection, at ¶ 5.) BARM's assertion is without merit. At this juncture, the Trustee is fairly confident in stating that no amount of investigation into the Zelinger Parties would satisfy BARM. Given the losses that BARM sustained at the hands of Barkany, and given that Zelinger is Barkany's uncle, the Trustee certainly understand BARM's continued questioning of whether the Zelinger Parties are "entitled to a good faith transferee defense." (Objection, at ¶ 29)

6. However, in conducting investigations and entering into settlements, the Trustee's focus is on the evidence, and the likelihood that, based on the evidence, the Trustee will prevail at the summary judgment, trial and appeal stages. It would not be in the best interest of all creditors of the Estate, either in terms of financial risk or time expended, if the Trustee refused to settle a claim based on the sort of hearsay, conjecture and speculation that BARM is offering.

7. The Trustee and his counsel spent years investigating the Zelinger Parties and, in particular, the transactions between the Zelinger Parties and the Debtor, Gershon Barkany ("Barkany").

8. The investigation included multiple meetings with BARM's counsel and depositions of Zelinger, the Debtor and Joseph Rosenberg (twice). BARM's counsel attended these depositions and was given the opportunity to ask any questions it deemed relevant to the Trustee's claims against the Zelinger Parties. BARM's counsel elected not to examine Barkany regarding any post 2010 transactions with the Zelinger Parties.

9. The investigation also included interviews conducted of Daniel Sklar and Larry Sturm, the controllers/chief financial officers of Ethical and Petex during the years that Barkany conducted his Ponzi schemes.

10. In addition, Trustee's counsel reviewed all of transcripts from the State Court depositions conducted of the Zelinger Parties and Joseph Rosenberg by BARM's counsel, and all documents, reports and files provided to counsel by BARM's counsel, which covered the years 2007 through the end of 2010.

11. Trustee's counsel also reviewed the voluminous document productions made by the Zelinger Parties and Joseph Rosenberg, the voluminous document productions made by Alan Gerson, Esq., the attorney through whose escrow accounts the funds of Barkany and his investors/lenders flowed from January 2011 until the date of Barkany's arrest in March 2013.

12. In addition to the Trustee's own theories, for years, the Trustee and his counsel sought to track down every "lead" provided by BARM in pursuit of the Trustee's claims against the Zelinger Parties. However, the Trustee did not uncover any evidence tending to prove that the Zelinger Parties were aware of, suspected, or aided and abetted, Barkany's Ponzi schemes. Thus, under binding Second Circuit precedent, the Trustee entered into the settlement on the basis that he was entitled to recover the "net winnings" of the Zelinger Parties. Notwithstanding the Objection, the Trustee believes that in entering into the settlement on this basis, he exercised his business judgment in a proper and appropriate manner.

13. BARM highlights that the amounts transferred by Barkany to the Zelinger Parties far exceeds the settlement amount. (PMOL, at ¶ 10.) However, BARM ignores the amounts transferred by the Zelinger Parties to Barkany, which, in the absence of knowledge of Barkany's misconduct, must be credited to the Zelinger Parties.

14.     BARM alleges that the Trustee's investigation of the Zelinger Parties was "done in a very accepting manner." (Objection, at ¶ 24.) In all of the Trustee's years as a Chapter 7 trustee, this is the first time that he has been accused on going too easy on a defendant. That being said, BARM's allegation has no basis. As stated above, the Trustee and his counsel followed the evidence. Nothing more, nothing less.

15.     BARM alleges that Trustee's counsel simply "accept[ed] without challenge Zelinger's testimony that he was not aware of Barkany's fraud." (Objection, at ¶ 24.) The Trustee believes that a fair and objective reading of Zelinger's deposition transcript reveals otherwise. Regardless, as always, prior to the deposition, Trustee's counsel inquired of BARM as to whether BARM possessed information that would prove useful at Zelinger's deposition. All issues raised by BARM were covered during the deposition. BARM's counsel elected not to appear for the deposition.

16.     BARM also questions whether the Zelinger Parties produced all documents concerning their financial relationship with Barkany. (Objection, at ¶ 23.) While there always exists the possibility that a defendant withholds a document from production, the Trustee has no reason to suspect that documents were withheld. In this regard, for the period of 2011 to March 2013, the documents produced by the Zelinger Parties were entirely consistent with the bank statements produced by Mr. Gerson. Had Mr. Gerson's escrow accounts revealed any transactions with Barkany not previously disclosed by the Zelinger Parties, it would have given the Trustee reason to doubt the completeness of the Zelinger Parties' production. No such discrepancies were revealed.

17.     BARM makes much of the fact that in May 2019, the Trustee secured possession of two (2) of Barkany's computers. While it is true that, until May 2019, the Trustee

was not aware of the existence of the two (2) computers -- believing that the hard drives previously provided to him by Barkany's counsel comprised all of the Debtor's computerized records -- the Trustee stands by the position that nothing contained in the computers undermines the basis of the settlement.

18. BARM states that its review has revealed that Barkany's computers contain a "substantial amount of information" created after BARM copied Barkany's hard drives in 2010. (Objection, at ¶ 39.) Putting aside how BARM is defining substantial, BARM has not identified a single post-2010 document, email or item of information that undermines the basis of the settlement.

19. BARM states that the computers contain a "substantial amount of information" created after Barkany's arrest in March 2013. (Objection, at ¶ 39.) The Trustee agrees with this characterization, but question how this information, none of which relates to the Zelinger Parties or transactions between Barkany and the Zelinger Parties, impacts the settlement.

20. BARM states that the computers contain information relating to Barkany's post-arrest business activities, including Barkany's raising of funds whose disposition "apparently remains unknown." (Objection, at ¶ 39.) Absent any indication or suggestion that the Zelinger Parties were involved in Barkany's post-arrest business activities, it appears that BARM is raising this issue to create an issue where none exists.

21. BARM states that after his arrest, Barkany "continued to use the name 'Ethical' in connection with his business ventures, which involved soliciting investors for oil and gas deals. (Objection, at ¶ 39.) Despite that none of the Zelinger Parties invested with Barkany, BARM appears to suggest that if Zelinger or Rosenberg knew that Barkany was operating a business using the name "Ethical" and did not stop him from doing so, it evidences that Zelinger

or Rosenberg knew that prior to his arrest, Barkany was operating a Ponzi scheme. The Trustee does not follow BARM's logic.

22. BARM contends that the settlement should not be approved until a "thorough review" of the computers, together with all of the email accounts referenced in documents contained in the computers, is undertaken. (Objection, at ¶ 40.) While the Trustee's firm's IT consultant and his counsel did not review every document and email in the computers, our review was more than sufficient to enable the Trustee to determine that the grounds favoring the settlement remained in place. Again, nearly all of the information on the computers deals with the period after Barkany's arrest. BARM has presented no evidence that during this post-arrest period that the Zelinger Parties transacted any business with Barkany. The Trustee does not see the benefit to all of the creditors of the Estate of having his counsel review emails from 2013, 2014 and 2015 that make no reference to (and do not concern) the Zelinger Parties.

23. BARM notes that the computers contains approximately 128,000 emails. (Objection, at ¶ 15.) However, BARM has not pointed to one (1) email that relates to the dealings between the Zelinger Parties and Barkany that underlie the Trustee's claims in this action.

24. Finally, BARM complains that the Trustee does not have the right to release the "BARM State Court Action Claims." (Objection, at ¶ 42.)

25. In their State Court action, BARM asserted claims against the Zelinger Parties (and Rosenberg) for fraudulent conveyance, aiding and abetting fraud, unjust enrichment, conversion and constructive trust, based on transfers occurring in 2008, 2009 and 2010. In its Objection, BARM does not identify which of its claims it believes are not property of the Estate. Based on the Trustee's understanding of BARM's claims, the Trustee believes that there is little doubt that the claims are property of the Estate.

26. For the reasons stated herein, the Trustee recommends that this Court approve the settlement.

WHEREFORE, it is respectfully requested that this Honorable Court grant the Trustee's application in its entirety and such other and further relief as this Court deems just and proper.

Dated: Garden City, New York
       August 2, 2019

                               Weinberg, Gross & Pergament LLP
                               Attorneys for Marc A. Pergament,
                               Chapter 7 Trustee of the Estate of
                               Gershon Barkany

By:    /s/ Marc A. Pergament
        Marc A. Pergament
        400 Garden City Plaza, Suite 403
        Garden City, New York 11530
        (516) 877-2424